2026 IL App (2d) 250419-U
No. 2-25-0419
Order filed July 1, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

MARIO H. HENDERSON, Defendant-Appellant

Appeal from the Circuit Court of McHenry County.
Honorable Mark R. Gerhardt, Judge, Presiding.
No. 22-CF-171

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Because defendant failed to comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), we dismiss the appeal.

¶ 2    Defendant, Mario H. Henderson, entered an open plea of guilty to one count of domestic battery (subsequent offense) (720 ILCS 5/12-3.2(a)(1) (West 2020)), a Class 4 felony (*id.* § 12-3.2(b)), in exchange for the dismissal of several additional charges, and was sentenced to two years and six months in prison. Defendant did not file a postplea motion. We granted defendant leave to file a late notice of appeal. On appeal, defendant contends that, although the trial court admonished defendant in accordance with the language of Illinois Supreme Court Rule 605(b) (eff. Apr. 15,

2024)[1], the admonitions were "deficient" because defendant told the court that he did not understand them. According to defendant, his lack of understanding should excuse his failure to file a postplea motion as required under Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). Defendant also maintains that, under the circumstances, the court had an affirmative duty to inquire whether new counsel be appointed. For the reasons that follow, we dismiss the appeal.

¶ 3                                          I. BACKGROUND

¶ 4       On March 17, 2022, defendant was indicted on seven counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2020)) (counts I through VII) and one count of interfering with the reporting of domestic violence (*id.* § 12-3.5(a)) (count VIII), stemming from an incident that occurred on November 13, 2021. The Office of the Public Defender was initially appointed to represent defendant. However, on November 30, 2023, the trial court discharged the public defender after private counsel—Philip Nathe—filed an appearance on behalf of defendant.

¶ 5       On March 17, 2025, while represented by Nathe, defendant entered an open plea to one count of domestic battery (subsequent offense) (*id.* § 12-3.2(a)(1)), a Class 4 felony (*id.* § 12-3.2(b)) (count I), in exchange for the dismissal of the remaining charges. The terms of defendant's sentence were not negotiated. Prior to accepting defendant's plea, the trial court held a colloquy with defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). During the colloquy, defendant agreed that he wanted to waive his right to a jury trial or bench trial. He agreed that he had discussed this with counsel, understood the waiver form that he signed, and had no questions about the form. The court next advised defendant that the minimum penalty for the

---

[1]Illinois Supreme Court Rule 605 was amended on September 24, 2025, effective January 1, 2026. See Ill. S. Ct. R. 605 (eff. Jan. 1, 2026). We cite to the version of the rule in effect at the time of the admonishments.

offense was probation or conditional discharge, with 72 hours imprisonment, and that, if the State showed that this was a second or subsequent offense, the maximum penalty was one to three years in prison, with the possibility of an extended-term sentence of up to six years, subject to four years' mandatory supervised release (MSR). Defendant stated that he understood. The court advised defendant that there was "no definitive sentence at this time" and that, after a sentencing hearing, defendant could be sentenced anywhere between the minimum and maximum sentences. Defendant agreed that he understood. Defendant also indicated that he understood the potential future consequences of the plea as explained by the court. Finally, the court asked defendant whether anyone "forced, threatened, or coerced" him to plead guilty, and defendant replied, "No, sir." The court also asked defendant, "Other than what we've just spoken about, has anyone promised you anything in exchange for doing so," and defendant replied, "No, sir." The court found that defendant knowingly, willfully, and voluntarily pleaded guilty.

¶ 6 The State presented the factual basis for the plea. The State indicated that, if the matter proceeded to trial, the State would prove beyond a reasonable doubt that, on November 13, 2021, defendant bit the victim—a family or household member of defendant—on the abdomen, causing her bodily harm. The State would also prove that defendant had previously been convicted of violating an order of protection in Cook County. Defendant stipulated to the factual basis and its sufficiency. The court accepted the stipulation and found that there was a sufficient factual basis for the plea. Thereafter, court found defendant guilty of count I and dismissed the remaining charges. The matter was continued for the preparation of a presentence investigation report (PSI) and a sentencing hearing.

¶ 7 The sentencing hearing took place on June 13, 2025. At the outset, after accepting certain corrections to the PSI, the trial court confirmed the potential sentences with counsel and defendant.

Defendant indicated that he understood. The State argued in aggravation that (1) defendant's conduct caused or threatened serious harm, (2) defendant had a history of prior delinquency for criminal activity, and (3) the sentence was necessary to deter others from committing the same crime. The State also admitted into evidence (1) a certified copy of defendant's prior conviction of violating an order of protection, a Class 4 felony, and (2) several photographs of the victim taken by a police officer on the scene. The State asked for an extended-term prison sentence. The State emphasized that the incident at issue was a "a very violent attack." The State also emphasized defendant's criminal history dating back to 1997, noting that it was "replete with a history of violence," and included two convictions of violating an order of protection, a prior domestic battery conviction, multiple battery charges, and crimes of dishonesty.

¶ 8    Defense counsel asked for probation. In mitigation, counsel claimed that defendant suffered from mental and physical health issues that would be endangered if he were imprisoned. Counsel noted that defendant suffered a work-related injury in April 2023. Counsel noted that the PSI reflects "a history of mental health concerns from PTSD to depression to traumatic brain injury. All of those concerns he's dealt with for some time." Regarding defendant's criminal background, counsel argued that "really nothing has occurred with the exception of the instant offenses since the year 2015" and that "[defendant has] been rebuilding his life for ten years seeking counseling, undergoing treatment, remaining employed, and doing what it takes to raise his daughter, support his daughter, and live a crime-free life[.]" . Counsel also noted that defendant pleaded guilty and thus accepted responsibility for the matter.

¶ 9    In allocution, defendant stated:

"I'm sorry this happened. I've really never been out here before. I shouldn't have probably been out here. I'm sorry I put myself in the position to get myself in trouble again after all the stuff that I've been through in my life trying to stay out of trouble.

I don't know. I just was in a bad position. It shouldn't have happened. It would never happen again. I mean, I was homeless at the time. I met this girl online. I just should have never been out here, and that incident should have never happened. And I apologize for that."

¶ 10    Prior to imposing sentencing, the trial court noted that it considered the PSI and the statutory aggravating and mitigating factors. The court acknowledged the photographs but gave them little weight. The court commented that defense counsel was asking the court to make assumptions regarding defendant's physical and mental health issues, noting that "no one has told [the court] how they would affect [defendant] whether he's on probation [or] in [prison]." The court also rejected defense counsel's assertion that defendant had been crime free for ten years, noting that the time between the last offense and present offense was only six years.

¶ 11    The trial court sentenced defendant to two years and six months in prison, with day-for-day credit to apply. The court stated that, given defendant's criminal history and recidivism, he was not a good candidate for probation. The court also noted that a sentence of incarceration was necessary to deter others and that a probation sentence would deprecate the seriousness of the offense, especially given defendant's continued criminality through the years.

¶ 12    Thereafter, defendant attempted to address the trial court. The trial court stated, "Sir, you had your opportunity." The parties proceeded to discuss presentencing credit and the MSR term. Thereafter, the following colloquy took place:

"THE DEFENDANT: Judge, could I take my plea back? I did not plead to this. I feel like the lawyer and the State's Attorney agreed to have me plead guilty to this. I did not know this girl. I've never been out here. She's not my girlfriend. It was a mistake of me coming out here for trying to get help before I found a place to live.

THE COURT: [Defendant], if you'd like to file pretrial motions—

THE DEFENDANT: Please. I did not want to plead guilty to this case. It was a bunch of things that happened in this case that I should not have pleaded guilty to. I did not know that girl. She was not my girlfriend.

THE COURT: Please listen. After we get done with the paperwork, I'm going to give you some admonishments regarding posttrial motions. That may answer some of your questions.

THE DEFENDANT: While I'm in prison?

THE COURT: Pardon?

THE DEFENDANT: While I'm in prison? I did not want to plead guilty to this case. The State's Attorney and my lawyer made me plead guilty to this case.

THE COURT: Again, sir, you'll have the opportunity to file posttrial—excuse me—post-sentencing motions, but, please, let's get to that point first.

THE DEFENDANT: I've never been out—I've been the only black—everything that happened in this courtroom has not been me, Judge. I know what my background says.

THE COURT: That's strange because—

THE DEFENDANT: I know what my background says.

THE COURT: Stop talking.

THE DEFENDANT: But I've been trying to get away from that background. And I told this girl about my background, and when I told her that, she did what she did. And I've pled this was self-defense for me.

THE COURT: Please stop for a moment.

THE DEFENDANT: This was self-defense, Judge.

THE COURT: Please stop for a moment. You stood in front of me. I gave you all the admonishments, me personally.

THE DEFENDANT: Yeah, and I felt like that was a setup. It was immediately—y'all came me here and you told me I needed to plead guilty to this case.

THE COURT: I didn't tell you any such thing.

THE DEFENDANT: Not you, Judge, I meant my lawyer and my—my lawyer and the State's Attorney. Whatever they agreed to, I did not agree to that. I felt like I was set up. As soon as I came in here, he told me I needed to plead guilty.

THE COURT: I'm going to take a brief recess while the paperwork is prepared. Please do not leave this room during that time."

¶ 13  Following a short recess, the matter continued:

"THE COURT: All right. [Defendant], you are going to receive a financial order in a moment. It indicates the total to pay, the $75 fine is $2,487.85.

THE DEFENDANT: I'm sorry, Judge. I can't hear you.

THE COURT: $2,487.85. You are going to get a copy of this in just a moment.

THE DEFENDANT: And what's that for?

THE COURT: Majority of that is assessments and sheriff's fees on the $75 fine. So the order shows the fine—

THE DEFENDANT: Judge—

THE COURT: —the assessments—

THE DEFENDANT: —can we talk about me pleading guilty to a case that I didn't do?

THE COURT: —the domestic violence, family member, two State's Attorney service fees, a variety of sheriff's fees for a grand total of $2,487.85. We'll get to your posttrial motions in a moment. Okay. That document is going to come off the printer. When it does, please review it with [defense counsel].

THE DEFENDANT: What is the posttrial? Judge, I've asked my lawyer to go to trial every single time. At the last second, him and the State's Attorney, I don't know what they talked about, but he forced me to plead guilty to this case.

THE COURT: Again, I'm going to go over post-sentencing motions in just a moment, okay? I have to get through the sentencing order including the financial order first.

So I believe that's printed out, [defense counsel]?

MR. NATHE [(DEFENSE COUNSEL)]: Yes.

THE COURT: You can take a look at that if you want. That may answer your answers [*sic*] as to what was on that order.

THE DEFENDANT: And this is for the sheriff's?

THE COURT: That's the amount of fines, fees, contributions, et cetera, that you are liable for based on the $75 fine.

[Defense counsel], were there any issues –

THE DEFENDANT: When am I supposed to pay this?

THE COURT: Were there any issues with the sentencing order?

MR. NATHE: None.

THE DEFENDANT: When am I supposed to pay this?

THE COURT: At your earliest opportunity.

THE DEFENDANT: I'm going to lose everything. If I go to jail, I'm not going to have anything when I get out. That's why I'm in this position now.

Judge, I was in a serious semi-truck auto accident. I almost died. I had three surgeries on my shoulder and I had two procedures in my neck, and I'm having another procedure in my neck and my hand also. There's certain feelings that I can't—I do not have with my functions. I also have something in my mouth. If I take this out, my teeth are going to fall out. There is a lot of things going on with me that my lawyer did not even do anything. Like, I told him from the very beginning, even I have letters from Steve Yeschek[2]. I have letters from my psychology. I have letters from people who know I've been trying and know that I did not put myself in this position. This girl, she grabbed my hair, Judge, and was pulling my hair to the point I couldn't get out of her hold. I wanted to go to trial and speak about all of this, but the lawyer and the State's Attorney, they conspired together to get me to plead guilty to this case.

THE COURT: I'm going to talk about what your options are at this point, okay? So you have—excuse me. You have the right to appeal. Prior to taking an appeal, you must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence or to have the judgment

---

[2]The PSI indicated that defendant "had attended mental health counseling through Yeschek & Associates, but [was] no longer engaged in sessions."

vacated and for leave to withdraw your plea of guilty setting forth your grounds for the motion.

If the motion is allowed, the sentence will be modified or the plea of guilty, sentence, and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made.

Upon the request of the State, any charges that may have been dismissed as a part of the plea agreement will be reinstated and also set for trial.

THE DEFENDANT: I have nobody, Judge, on the outside. I take care of myself and my daughter. I have nobody that's going to help me with this. My finances, my money, everything is going to be gone. My lawyer, the people that's helping me get myself healthy again, all of that is going to be gone. When I get out of here, I'm not going to have any— I'm going to be homeless again.

THE COURT: If the motion to reconsider sentence or vacate the judgment is denied and you still desire to appeal, you must file your notice of appeal within 30 days of the date that the motion was denied.

If you are indigent, a copy of the transcript of the proceedings at the time of the plea of guilty and sentence will be provided without cost to you and counsel will be appointed to assist you with the preparation of the motion.

If any appeal taken from the judgment on the plea of guilty—excuse me. Any appeal taken from the judgment on the plea of guilty, any issue or claim of error not raised in the motion to reconsider the sentence or to vacate the judgment and to withdraw your plea of guilty shall be deemed waived by the Appellate Court.

Do you understand your right to appeal?

THE DEFENDANT: I'm not sure if I understand anything. I'm mentally messed up. I don't have a mental capacity for this, Judge. I was mentally messed up when she grabbed—when I was in the position. I have the papers that are saying the traumatic brain injury. She didn't go to the hospital. I went to the hospital after this and got a traumatic brain injury from this incident, and I have the proof from it. That was the reason I was going to see Steve Yeschek and the counselors. I'm telling you, my lawyer, he did not—he played the game with the State's Attorney, Judge. I've been the only black person in this courtroom. I've been totally intimidated. And when he came in here and told me I needed to plead guilty, I pled guilty.

THE COURT: Sir, do you understand your right to appeal, that you have a right to appeal?

THE DEFENDANT: No, Judge. I need—I'm mentally messed up, Judge.

THE COURT: Would you like me to read—

THE DEFENDANT: I've been mentally messed up for a long time.

THE COURT: Would you like me to read it again?

THE DEFENDANT: I need some mental help, Judge. I've been mentally messed up for a long time, I'm telling you. I know this and my background looks bad, but I was abused as a kid. Y'all never evaluated me as a kid and seen what was wrong with me. Y'all always tried to throw me in jail. Like, I was abused. My mother abused me. My grandmother abused me as a kid. I didn't even get out of my own mental [*sic*] until I was damn near 30. This was the things I found out when I was going through these counselors and these psychotherapy and the stuff that I know I need. I need this stuff. Without it I

know I'm going to lose my mind. I'm going to lose everything, Judge, and I'm going to be homeless and I'm going to be messed up all over again.

THE COURT: Do you understand that you have the right to appeal?

THE DEFENDANT: I need some mental help. I don't understand. This lawyer just tricked me into pleading guilty. I don't understand. I don't understand. I needed mental help 20 years ago and didn't get it.

THE COURT: [Defendant], I wasn't your judge 20 years ago.

THE DEFENDANT: You're my judge today.

THE COURT: I know. That's why I'm trying to explain to you your rights, but you keep cutting me off and—

THE DEFENDANT: I don't understand my rights, Judge.

THE COURT: —although you are being very lucid—

THE DEFENDANT: That's what I'm telling you.

THE COURT: All right. I'm done because you keep cutting me off. I've explained all your rights to appeal. I've offered to explain them again to you, but you apparently don't want me to. If you want me to, I will go through them again one at a time. Would you like me to do that?

THE DEFENDANT: (Nodding.)

THE COURT: Okay. You are nodding your head yes. I'll go through them again.

THE DEFENDANT: Yes, Judge.

THE COURT: Give me a moment. Do you understand that you have the right to appeal?

THE DEFENDANT: Yes.

THE COURT: Prior to taking an appeal, you must file in the trial court within 30 days of the date on which the sentence is imposed a written motion asking to have the trial court reconsider the sentence or to have the judgment vacated and for leave to withdraw your plea of guilty setting forth your grounds for the motion.

Do you understand?

THE DEFENDANT: Can you say that one more time?

THE COURT: Sure. Prior to taking an appeal, you must file in the trial court within 30 days of the date on the which sentence is imposed a written motion asking to have the trial court reconsider the sentence or to have the judgment vacated and for leave to withdraw your plea of guilty setting forth your grounds for the motion.

THE DEFENDANT: See, I don't understand some of this, Judge.

THE COURT: Well, I'm going to jump forward. If you are indigent, a copy of the transcript of the proceedings at the time of the plea of guilty and sentence will be provided without cost to you and counsel will be appointed to assist you with the preparation of the motion.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I'm going to go back to where we were. If the motion is allowed, the sentence will be modified or the plea of guilty, sentence, and judgment will be vacated and a trial date will be set on the charge to which the plea of guilty was made.

Do you understand?

THE DEFENDANT: (Nodding.)

THE COURT: You are nodding your head yes.

THE DEFENDANT: Yes.

THE COURT: Okay. The next point is, upon request of the State, any charges that may have been dismissed as a part of the plea agreement will be reinstated and also set for trial. In other words, if the plea is vacated, Counts 2 through 8 get reinstated and everything gets set for trial.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If the motion to reconsider sentence or vacate the judgment is denied and you still desire to appeal, you must file your notice of appeal within 30 days of the date that the motion was denied.

Do you understand?

THE DEFENDANT: Judge, this is just like the last time when you were reading this stuff. I didn't understand then. I don't really understand now, Judge. I'm telling you, my lawyer don't even know how to—I don't understand what's going on.

THE COURT: Let me read that again. If the motion to reconsider, the one we just talked about, or vacate the judgment is denied—

THE DEFENDANT: How am I supposed to do all this? Like, this is what I don't understand. Like, I'm not understanding.

THE COURT: Well, I just told you, if you're indigent, you can have a new lawyer appointed to assist you with the appeal.

So if the motion to reconsider the sentence or judgment is denied and you still desire to appeal, you must file your notice of appeal within 30 days of the date that the motion

- 14 -

was denied. So if you file said motion and you are not successful, you have 30 days to file a notice of appeal from then.

Understood?

THE DEFENDANT: (Unintelligible.)

THE COURT: Pardon?

THE DEFENDANT: Yeah.

THE COURT: All right. [Defendant] said yes and is nodding his head yes.

If any appeal taken from the—or in any appeal taken from the judgment on the plea of guilty, any issue or claim of error not raised in the motion to reconsider the sentence or to vacate the judgment and withdraw your plea of guilty—

THE DEFENDANT: Judge?

THE COURT: —shall be deemed waived by the Appellate Court. Do you understand? In other words, you have to raise all the issues in the motion otherwise the Appellate Court won't—

THE DEFENDANT: Judge, I'm in serious pain right now as well. It's hard for me to really, like, grasp what's going on or what you are saying or how am I supposed to do it. I understand what you are saying about the appeal.

THE COURT: Okay.

THE DEFENDANT: But I just don't understand how I'm supposed to do any of this. I don't—I feel like I'm alone. I feel like I don't know what happened here.

THE COURT: You have a lawyer sitting right next to you who can explain what it means.

THE DEFENDANT: My lawyer just literally made me do something I did not want to do. I have not seen anybody in this courtroom who was helping me at all. I've been only—I don't—like I said, I've been the only minority since I've been coming in here, and I don't know how to speak for myself about some of the stuff that's been going on. It's hard for me to understand what's going on. As far as mental, I have a lot of paperwork about my mental health and that I can't understand certain things. A lot of things happened to me back when I was younger that never got evaluated.

THE COURT: Anything else—

MR. NATHE: Thank you, Judge.

THE COURT: Pardon?

MR. NATHE: Thank you, Judge.

THE COURT: Anything else from the State?

MR. GREGOROWICZ [(ASSISTANT STATE'S ATTORNEY)]: No, Judge.

THE COURT: Court is adjourned. Good luck, [defendant]."

¶ 14   Three months later, on September 22, 2025, defendant filed a *pro se* notice of appeal, claiming that defense counsel was ineffective. In an attached affidavit, defendant averred that his notice of appeal was untimely due to counsel's failure to file it. He also claimed that he was coerced to enter the open guilty plea. Defendant did not first file a motion to withdraw his guilty plea or for reconsideration of his sentence.

¶ 15    The Office of the State Appellate Defender was appointed to represent defendant. On October 31, 2025, we granted defendant's third motion for leave to file a late notice of appeal. The State did not object.[3]

¶ 16                                    II. ANALYSIS

¶ 17    Defendant contends that, although the trial court admonished him in accordance with the language of Illinois Supreme Court Rule 605(b) (eff. Apr. 15, 2024), the admonitions were "deficient" because defendant told the court that he did not understand them. According to defendant, his lack of understanding should excuse his failure to file a postplea motion as required under Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). In addition, defendant maintains that, under the circumstances, the court had an affirmative duty to inquire whether new counsel should have been appointed.

¶ 18    In response, the State contends that defendant's appeal must be dismissed because he failed to comply with Rule 604(d). According to the State, the admonition exception to Rule 604(d) does not apply, because trial court properly admonished defendant per Rule 605(b). The State further

_____

[3]In its brief, the State asserts that it "continue[s] to maintain [its] objections to jurisdiction" based on Illinois Supreme Court Rule 606(c) (eff. Jan. 1, 2026), which provides for the filing of a late notice of appeal. Defendant sought leave in this court to file a late notice of appeal three times. We denied, without prejudice, defendant's first two motions for leave; we granted defendant's third motion for leave. Although the State objected to the first two motions, based on defendant's failure to comply with Rule 606(c), the State raised no objection to the third motion. Indeed, defendant's third motion expressly stated that "[o]pposing counsel has seen a draft of this Motion and will not be filing a response." The State raises no argument in its brief concerning our grant of defendant's third motion for leave to file a late notice of appeal.

contends that the court had no duty to ascertain whether new counsel should be appointed, where defendant was properly admonished and represented by private counsel.

¶ 19    Illinois Supreme Court Rule 604(d) provides, in relevant part:

"No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment.

***

The motion shall be in writing and shall state the grounds therefore. *** The motion shall be presented promptly to the trial judge by whom the defendant was sentenced ***. The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 20    Compliance with Rule 604(d) is a condition precedent to an appeal from a judgment entered on a plea of guilty. *People v. Flowers*, 208 Ill. 2d 291, 300-01 (2003). While the failure to file a timely Rule 604(d) motion does not deprive this court of jurisdiction over the appeal, it does require us to dismiss the appeal. *Id.* However, "[d]ismissal of an appeal based on a defendant's failure to file the requisite motions in the trial court would violate due process if the defendant did not know that filing such motions was necessary." *Id.* Thus, to guard against the inadvertent loss of the right to appeal from a judgment entered on a guilty plea, Rule 605(b) mandates that the trial court advises the defendant, at the time sentence is imposed, of the procedural steps required to appeal. *Id.*

¶ 21    Rule 605(b) states in relevant part:

"In all cases in which a judgment is entered upon a plea of guilty, other than a negotiated plea of guilty, at the time of imposing sentence, the trial court shall advise the defendant substantially as follows:

(1) that the defendant has a right to appeal;

(2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the trial court reconsider the sentence or to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion;

(3) that if the motion is allowed, the sentence will be modified or the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made;

(4) that upon the request of the State any charges that may have been dismissed as a part of a plea agreement will be reinstated and will also be set for trial;

(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant with the preparation of the motions; and

(6) that in any appeal taken from the judgment on the plea of guilty any issue or claim of error not raised in the motion to reconsider the sentence or to vacate the judgment and to withdraw the plea of guilty shall be deemed waived." Ill. S. Ct. R. 605(b) (eff. Apr. 15, 2024).

¶ 22 Unless the trial court has "strictly complied" with Rule 605(b)'s admonishment requirements, a defendant's failure to comply with Rule 604(d)'s motion requirement will not

- 19 -

result in the irretrievable loss of the right to appeal; instead, the appellate court will remand the case to the trial court for proper admonitions. *People v. Dominguez*, 2012 IL 111336, ¶ 11. This well-recognized principle is known as the "admonition exception." *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 41 (2011). By its own terms, Rule 605(b) "requires only that a defendant be 'substantially' advised of the actual content of [the rule]." *Dominguez*, 2012 IL 111336, ¶ 11. "[U]nder its plain and ordinary meaning, 'substantially' in the rule does not require a strict verbatim reading of the rule ***. Rather, the court must impart to a defendant largely that which is specified in the rule, or the rule's 'essence,' as opposed to 'wholly' what is specified in the rule." *Id.* ¶ 19. We review *de novo* the sufficiency of admonitions under Rule 605(b). *Id.* ¶ 13.

¶ 23    Here, there is no question that the trial court substantially complied with Rule 605(b)'s admonishment requirement. Indeed, the court twice expressly and correctly advised defendant—essentially verbatim—of the contents of the rule. After the first set of completed admonitions, when the court asked defendant whether he understood his right to appeal, defendant replied: "I'm not sure if I understand anything." After additional colloquy, the court stated: "If you want me to, I will go through them again one at a time." Defendant agreed that the court should do so. Thereafter, the court restated each individual admonishment and asked defendant whether he understood each one. Defendant expressly confirmed his understanding to all but one admonishment. Nevertheless, although defendant claimed to not understand "some of" the admonition concerning the requirement that he file a written motion within 30 days of sentencing, he ultimately stated: "I understand what you are saying about the appeal." When defendant thereafter stated that he did not "understand how [he was] supposed to do any of this," the court told him that his counsel "can explain what it means."

¶ 24   Defendant makes no claim—nor could he—that the trial court's oral admonitions were substantively deficient. Nevertheless, relying on *Dominguez*, defendant suggests that unless defendant actually understands the admonitions, there can be no substantial compliance with Rule 605(b). At issue in *Dominguez* was whether "a signed form from [the] defendant containing nearly word-for-word Rule 605(c) admonishments" could be used in determining whether the trial court substantially complied with Rule 605(c). *Dominguez*, 2012 IL 111336, ¶ 24. The defendant argued that the written form should not be considered because (1) the form was written in English, (2) the defendant spoke Spanish, and (3) the record did not show that the form had been translated. *Id.* In rejecting the defendant's argument, the supreme court noted that the defendant told the court that he had signed the form after making himself aware of rights therein and that the defendant had a Spanish interpreter present with him. *Id.* ¶ 35, 36. The court stated: "[T]he written admonishments signed by defendant here were discussed with [the] defendant by the circuit court in open court immediately after the oral admonishments, providing the judge with an opportunity to ascertain that defendant signed the form and to verify that defendant understood and was aware of the important rights contained in the admonishment form." *Id.* ¶ 35. The court concluded that, although the oral admonishments were "imperfect," "the admonishments provided in this case as a whole, both oral and written, were sufficient to impart the essence or substance of the rule to [the] defendant." *Id.* ¶ 54.

¶ 25   *Dominguez* does not lead us to conclude that the trial court here did not substantially comply with Rule 605(b). Under the circumstances presented in *Dominguez*, given the claimed language barrier, it was necessary to consider whether the Spanish-speaking defendant was able to understand the admonitions written in English to determine whether the written form could be used to supplement the deficient oral admonitions for purposes of determining substantial compliance

with the rule. Here, there was no language barrier and no dispute that the court's admonitions "were sufficient to impart the essence or substance of the rule to defendant." *Id.* Moreover, as noted, defendant did expressly confirm his understanding of all but one of the individual admonitions. We note too that defendant was alert and coherent throughout both the plea proceedings and sentencing proceedings. Defendant participated fully at the guilty plea hearing. He responded appropriately throughout the proceedings and never expressed confusion or any inability to understand. The same can be said for defendant's participation at the outset of the sentencing hearing. Defendant indicated that he had received and read a copy of the PSI. He also indicated that he understood the potential sentences that he faced. At no point did defendant interrupt or ask questions. He also made an appropriate statement in allocution, apologizing for the incident. Indeed, it was not until the trial court indicated that it was going to impose a prison sentence that defendant began to interrupt and later claimed an inability to understand the admonitions. Even then, the court noted that defendant was "lucid."

¶ 26 Defendant has not directed us to any authority holding that there can be no substantial compliance with Rule 605(b) where a defendant claims that he did not understand properly stated admonitions. Indeed, this court has already rejected such a claim. See *People v. Griffin*, 305 Ill. App. 3d 326, 332 (1999) (distinguishing the issuance of the Rule 605(b) admonitions from a defendant's subjective understanding of them). We are not persuaded by defendant's reliance on *People v. Blackmon*, 2024 IL App (1st) 220586, and *People v. Braden*, 2018 IL App (1st) 152295, as they are readily distinguishable. In each case, the defendants' misunderstandings stemmed from admonitions that did not substantially comply with the rule. See *Blackmon*, 2024 IL App (1st) 220586, ¶ 9 ("[T]he trial court failed to admonish [the] defendant that he had a right to be appointed counsel to file a Rule 604(d) motion to vacate his guilty plea."); *Braden*, 2018 IL App (1st) 152295,

¶ 29 ("[The trial court] did not, either orally or in writing, tell [the defendant] what he needed to do to challenge his guilty plea.").

¶ 27   Nevertheless, defendant contends that once he (1) manifested his desire to withdraw his guilty plea, (2)  told the court that he did not understand the admonitions, and (3) claimed that defense counsel forced him to plead guilty, the court should have taken affirmative action and inquired whether new counsel should have been appointed. In support, he cites *People v. Perry*, 2014 IL App (1st) 122584. In *Perry*, the defendant pleaded guilty to aggravated assault with a gun, and the trial court sentenced him per the terms of the parties' plea agreement. *Id.* ¶ 1. Just over a week later, the defendant filed a *pro se* " 'Notification of Motion,' " stating he wished to withdraw his guilty plea. *Id.* ¶ 6. He did not state any reasons for his request or file an accompanying motion. *Id.* At a subsequent hearing, when asked why he filed the notification, the defendant stated that it was because he " 'had ineffective assistance of counsel.' " *Id.* ¶ 7. The trial court struck the notification and told the defendant to file a motion. *Id.* He never did. *Id.* ¶¶ 7-9.

¶ 28   On appeal, in addition to finding that the trial court's Rule 605(c) admonitions were clearly deficient, the reviewing court found that, when the defendant indicated a desire to appeal—by virtue of the written notification and discussions at the hearing—the court had an " 'affirmative duty' " to offer the defendant counsel to assist him with his appeal. *Id.* ¶ 23. In support, the court relied on *Griffin*, where we held that the trial court had a duty to ask the *pro se* defendant if he wanted counsel appointed, where the defendant, following the Rule 605(b) admonitions, sought clarification of the Rule 604(d) motion requirements, asked whether he was entitled to counsel, and expressly asked the court, " 'Can I be appointed an attorney to represent me in this appeal?" " *Griffin*, 305 Ill. App. 3d at 329-32.

¶ 29    *Perry* and *Griffin* are distinguishable. Under Rule 604(d), when a defendant presents a postplea motion to the trial court, "[t]he trial court shall then determine *whether the defendant is represented by counsel*, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Here, unlike the defendants in *Perry* and *Griffin*, defendant *was* represented by counsel. Indeed, after defendant expressed his desire to withdraw his guilty plea and then claimed that he did not "understand how [he was] supposed to do any of this," the trial court stated: "You have a lawyer sitting right next to you who can explain what it means." Given that defendant was represented by private counsel and expressed no intent to discharge counsel, the court had no duty to determine whether defendant was indigent and wanted counsel appointed to represent him.

¶ 30    To be sure, defendant claimed that defense counsel had coerced him into pleading guilty. Although not raised by defendant, defendant's statements to the trial court arguably raised an ineffective-assistance-of-counsel claim sufficient to trigger the court's duty to inquire into his claim pursuant to the common-law procedure developed in *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny. In *People v. Roddis*, 2020 IL 124352, ¶¶ 35-36, our supreme court explained the procedure, as follows:

> "Under the common-law procedure, a *pro se* defendant is not required to file a written motion but need only bring his or her claim to the trial court's attention. [Citation.] New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. [Citation.] Rather, when a defendant makes such a claim, the court should first examine the factual basis of the defendant's claim. [Citation.] If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny

the *pro se* motion. [Citation.] However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citation.]

New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. [Citation.]"

¶ 31    The *Krankel* procedure "encourages the trial court to exercise is fact-finding abilities and 'create the necessary record for any claims raised on appeal.' " *People v. Downing*, 2019 IL App (1st) 170329, ¶ 37 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 38). These rules apply regardless of whether the defendant was represented by retained or appointed counsel. See *In re Johnathan T.*, 2022 IL 127222, ¶¶ 38-40 (in a case involving juvenile delinquency, the supreme court agreed with the view espoused in a special concurrence in an earlier criminal case that *Krankel* applies in situations involving retained counsel).

¶ 32    As noted, defendant makes no argument on appeal that the trial court failed to conduct a *Krankel* inquiry. Thus, any such argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *People v. Vargas*, 2025 IL App (2d) 240690, ¶ 38.

¶ 33    Forfeiture aside, and assuming *arguendo* that defendant's comments were sufficient to trigger the trial court's duty to inquire under *Krankel*, the court's failure to conduct a *Krankel* inquiry was harmless error. We find *People v. Palomera*, 2022 IL App (2d) 200631, instructive. In *Palomera*, the defendant raised two ineffectiveness claims in a *pro se* posttrial motion. *Id.* ¶ 20. Defense counsel withdrew and private counsel filed an appearance on defendant's behalf. *Id.* ¶ 22. The trial court never inquired into the claims. *Id.* One claim was later raised in a motion filed by

new counsel and rejected. *Id.* ¶ 23. However, the remaining claim—that the defendant's jury waiver was improperly coerced—was never raised and addressed. *Id.* ¶ 64. On appeal, the defendant argued that, because the trial court never conducted a *Krankel* inquiry, the matter must be remanded for the requisite inquiry. *Id.* ¶ 55.

¶ 34 We disagreed. We recognized that the failure to conduct a *Krankel* inquiry may be deemed harmless error if the claim is positively rebutted by the record. *Id.* ¶ 62. We found that the court's failure to inquire into the first claim was harmless error, because it was ultimately considered and rejected by the trial court. *Id.* ¶ 63. We found that the court's failure to inquire into the defendant's second claim—that he was coerced into waiving his right to a jury—was also harmless error. *Id.* ¶ 64. We noted that the record showed that, before accepting the jury waiver, the trial court twice asked the defendant whether anyone was forcing him to waive his jury right. *Id.* The defendant indicated that he was not being forced and that he believed a bench trial was his best choice. *Id.* Thus, we concluded that, because the defendant's claims were positively rebutted by the record, the court's failure to conduct a preliminary *Krankel* inquiry was harmless error. *Id.*

¶ 35 So too here. Defendant's only claim—that counsel forced him to plead guilty—is flatly rebutted by defendant's statements at the plea hearing. The record shows that, prior to accepting defendant's guilty plea, the trial court questioned defendant as to whether anyone had "forced, threatened, or coerced" him to plead guilty and whether, "[o]ther than what [they had] spoken about," anyone had "promised [him] anything in exchange for doing so." Defendant affirmatively indicated that he was not being forced into pleading guilty and that no promises had been made to him. Under the circumstances, any failure to conduct a preliminary *Krankel* inquiry into defendant's claim that counsel forced him to plead guilty was harmless error.

¶ 36    Based on the foregoing, because the trial court substantially complied with Rule 605(b) and defendant failed to comply with the requirements of Rule 604(d), we must dismiss the appeal. See *Flowers*, 208 Ill. 2d 291 at 301 ("As a general rule ***, the failure to file a timely Rule 604(d) motion precludes the appellate court from considering the appeal on the merits. Where a defendant has failed to file a written motion to withdraw his plea of guilty or to reconsider his sentence, the appellate court must dismiss the appeal [citation], leaving the Post–Conviction Hearing Act as the defendant's only recourse [citation].").

¶ 37                              III. CONCLUSION

¶ 38    For the reasons stated, we dismiss the appeal.

¶ 39    Appeal dismissed.